IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THE TRUSTEES OF THE UNIVERSITY )
OF PENNSYLVANIA, )
                                        )
            Plaintiff, )
                                        ) C.A. No. 22-145 (JLH)
       v. )
                                          )
GENENTECH, INC., )
                                          )
           Defendant. ) REDACTED - PUBLIC VERSION

**GENENTECH'S RESPONSE TO PENN'S CONCISE STATEMENT OF
MATERIAL FACTS TO BE TRIED IN SUPPORT OF PENN'S OPPOSITION
TO GENENTECH'S MOTION FOR SUMMARY JUDGEMENT OF
<u>INVALIDITY (GENENTECH'S MOTION NO. 1)</u>**

**Penn's Statement of Disputed Facts (SODF) No. 1:** U.S. Patent No. 7,625,558 ("the '558 Patent") does not claim new classes of antibodies. The claims are to novel methods of treating cancer by giving a patient an antibody from a well-known and well-described class of antibodies, followed by radiation therapy. Def. Ex. 4, Riechmann Rpt. ¶¶ 129, 172, 198; Ex. 1, Riechmann Tr. 237:4-15; *see* Ex. 2, Garcia Tr. 75:18-22, 133:5-8.

**Response to Penn's SODF No. 1:**  Partially undisputed but not material; partially incorrect as a matter of law.  Agreed that the claims are methods, not antibodies, but that is legally immaterial. The claims encompass using unknown antibodies so long as they have the claimed functionality. Claim scope is a legal issue and "the asserted claims in this case cover using both known antibodies and antibodies not yet described or made with the same functional properties.'"  D.I. 264 ¶ A3.

**Penn's SODF No. 2:** The level of skill in the art of anti-erbB antibodies was high as of July 8, 1998, which would reduce the amount of guidance that a POSA would require from the patent specification. Riechmann Rpt. ¶ 171, 182, 197.

**Response to Penn's SODF No. 2:** Partially undisputed but not material; partially incorrect as a matter of law.  The level of skill in the art of ***known*** anti-erbB antibodies was high, but, in view of the nature of and number of unknown anti-erbB antibodies, and the need for experimentation to identify antibodies by function, the specification needed to provide more guidance under *Amgen*.

**Penn's SODF No. 3:** As of July 8, 1998, the field of anti-erbB antibodies was mature. The prior art literature described dozens of anti-erbB antibodies that could be used in the claimed methods. ¶¶ 47-64, 174-178, 199-200. There were also dozens more anti-erbB antibodies that were commercially available. Riechmann Rpt. ¶ 58; Garcia Tr. 206:1-13; Ex. 5, NeoMarkers Website, at 1-2, 4-13. The prior art anti-erbB antibodies were well-known and studied, and their properties, functions, and structures had been characterized. Garcia Tr. 47:7-20, 182:11-197:14; Def. Br. at 16; *see also* Riechmann Rpt. ¶¶ 51-64; Riechmann Tr. 189:17-192:9 (discussing that prior art anti-erbB antibodies were known to the claimed properties); 213:1-215:11 (testifying that the properties of prior art anti-erbB antibodies were known).

**Response to Penn's SODF No. 3:** Partially factually incorrect and partially undisputed but not material.  A number of anti-erbB antibodies were known and characterized.  Some of those functioned in the claimed ways but others did not.  Penn Opp. Ex. 1 (Riechmann Dep.) at 191:12-192:9; *id.* at 249:4-11 ("there's no particular amino acid sequence common among those antibodies

that makes them have the claim[ed] functions"); D.I. 264 ¶A6.  Trial-and-error experimentation would be required to identify the antibodies that would work.  *See* D.I. 223 ¶¶A12-A17.

**Penn's SODF No. 4:** A POSA could have used an already-known anti-erbB antibody to practice the claims. Riechmann Rpt. ¶ 191, 206; Garcia Tr. 73:11-16 (agreeing that a POSA could have simply "used a prior art antibody" to carry out the invention in 1998). If a POSA wanted to use a new antibody, it would have taken only routine experimentation. Riechmann Rpt. ¶¶ 191, 206. For example, antibodies could have been selected using phage-displayed libraries available as of July 8, 1998 in a high-throughput manner. Riechmann Rpt. ¶ 189.

**Response to Penn's SODF No. 4:** Partially undisputed but not material; partially incorrect as a matter of law.  A POSA could use a prior art antibody to practice the claims, but the claims are not limited to the use of known antibodies, and it "is the definition of trial and error" to require that skilled artisans "make candidate antibodies and screen them to determine which ones perform the claimed functions."  *Baxalta Inc. v. Genentech, Inc.*, 81 F.4th 1362, 1367 (Fed. Cir. 2023).

**Penn's SODF No. 5:** In view of the numerous anti-erbB antibodies including anti-p185 antibodies that were already known in the art, making antibodies that would have a particular functional outcome would not have been unpredictable in 1998. A POSA would have expected to be able to make new antibodies with the properties that are relevant to the claimed methods using procedures that were routine and well known in the art. Riechmann Rpt. ¶ 191.

**Response to Penn's SODF No. 5:** Incorrect as a matter of law.  As explained in the response to SODF No. 3, there are no common structural features to guide the POSA from known to unknown antibodies that also functioned as claimed, and it "is the definition of trial and error" to require that skilled artisans "make candidate antibodies and screen them to determine which ones perform the claimed functions."  *Baxalta Inc.*, 81 F.4th at 1367.  The 1998 priority date here does not distinguish this case from *Baxalta* (1999 date) or *Amgen* (2008 date).  Reply Br. at 3-4.

**Penn's SODF No. 6:** The '558 Patent specification provides substantial guidance about the claimed methods and antibodies used in the claim methods, including how to identify and select an antibody having the recited properties. The specification identified antibodies that could bind to erbB receptors, including HER2, and it also incorporated by reference prior art disclosing antibodies that could be used for the claimed methods and their relevant properties. '558 Patent at 24:33-43; Riechmann Rpt. ¶¶ 52-58, 132.

2

**Response to Penn's SODF No. 6:** Partially incorrect as a matter of law; partially not material. The specification does not provide substantial guidance about the full scope of antibodies that can be used, including for the reasons listed in response to SODF Nos. 3-5. The antibodies and testing methods identified in the patent are legally insufficient under *Amgen*.

**Penn's SODF No. 7:** The '558 Patent specification discloses tests that were known in the art for evaluating antibodies for the properties recited in the claims, including assays for detecting dimer formation, determining tyrosine kinase activity, and assessing inhibition of tumor cell growth and cytostasis. These were common assays that were routinely used to characterize antibodies and their function as of 1998. Riechmann Rpt. ¶¶ 132, 171, 177, 187-188.

**Response to Penn's SODF No. 7:** Undisputed for this motion but not material. The testing methods identified are legally insufficient under *Amgen*. It "is the definition of trial and error" to require that skilled artisans "make candidate antibodies and screen them to determine which ones perform the claimed functions." *Baxalta Inc.*, 81 F.4th at 1367.

**Penn's SODF No. 8:** The '558 Patent specification provides experimental evidence supporting the claimed invention that the combination of erbB receptor inhibition followed by therapeutic radiation could achieve an improved killing of cancer cells. Riechmann Rpt. ¶¶ 113, 134.

**Response to Penn's SODF No. 8:** Incorrect as a matter of law. Even accepting solely for purposes of this motion that the specification provides experimental evidence with respect to the use of *some* anti-erbB antibodies followed by radiation, that is not what Penn claimed. The use of unknown antibodies is also claimed but not supported. *See supra* Responses to SODF Nos. 3-7.

**Penn's SODF No. 9:** Based on the results of the experiments and examples in the '558 Patent specification, a POSA would have understood that another anti-erbB antibody could predictably achieve the same result without undue experimentation. Riechmann Rpt. ¶ 179-180, 190.

**Response to Penn's SODF No. 9:** Incorrect as a matter of law as set forth in Response to SODF Nos. 3-8. Additionally, if this SODF asserts that the patent taught that *all* other anti-erbB antibodies could achieve the same result, that is undisputedly wrong. Dr. Riechmann testified that there would be some anti-erbB antibodies that performed that claimed functions and some that would not, and Penn does not dispute that testimony. *See* D.I. 223 ¶A11; D.I. 264 ¶A11.

3

**Penn's SODF No. 10:** Claims 73, 83, and 88 limit the antibody to be used in the claimed method to "a humanized 4D5 antibody." Def. Ex. 1, '558 Patent, claims 73, 83, 88. Claims 83 and 88 each require the humanized 4D5 antibody to contain a specific sequence of amino acids identified in the patent as SEQ ID NO 35, which is found in complementarity determining region 3 ("CDR3") of 4D5. Riechmann Rpt., ¶¶ 98, 203.

**Response to Penn's SODF No. 10:** Undisputed but not material. The claims are not limited to any particular humanized 4D5 antibodies but also "cover new, different humanized 4D5 antibodies," including new antibody fragments, Ex. 2 (Riechmann Dep.) at 241:17-243:11, and whether new antibodies fall within the claim depends upon the functions the antibodies perform.

**Penn's SODF No. 11:** Typically, the CDR regions, which are found at the tips of the antibody as a set of loops, contact the target antigen of an antibody and are primarily responsible for binding. The CDR3 region is typically the main contact site with the antigen. Riechmann Rpt., ¶ 37.

**Response to Penn's SODF No. 11:** Undisputed solely for this motion but not material.

**Penn's SODF No. 12:** The '558 Patent specification discloses tests done with peptide mimetics designed to imitate the sequence and binding of 4D5's CDR3 region. Riechmann Rpt. ¶¶ 96-97, 106; '558 Patent, 64:3-15, Example 8. Such peptidomimetics were used by scientists to study CDRs and their function. Riechmann Rpt. ¶ 40.

**Response to Penn's SODF No. 12:** Undisputed solely for this motion but not material. The claims are not limited to 4D5, any particular humanized version of 4D5, or any other set of known antibodies. No claim requires an antibody with the full CDR3 sequence.

**Penn's SODF No. 13:** The '558 Patent specification discloses that the 4D5 antibody's specificity derived from the CDR3 region. Riechmann Rpt. ¶¶ 96-98, 106.

**Response to Penn's SODF No. 13:** Undisputed solely for this motion but immaterial for the reasons set forth in response to SODF No. 12.

**Penn's SODF No. 14:** The established humanization techniques as of 1998 were shown to result in significant retention of antibody specificity and affinity, regardless of the non-human monoclonal antibody that was being humanized. Riechmann Rpt. ¶ 46.

**Response to Penn's SODF No. 14:** Undisputed solely for this motion but immaterial for the reasons set forth in response to SODF No. 12. Additionally, Dr. Riechmann conceded that

conducting a humanization project in early 1998 would take something "in the time scale of 10 months." Penn Opp. Ex. 1 (Riechmann Dep.) at 69:19-70:10.

**Penn's SODF No. 15:** A POSA would understand that humanization would preserve the CDR regions of 4D5, including CDR3H to which SEQ ID NO: 35 belongs. Riechmann Rpt. ¶ 169.

<u>**Response to Penn's SODF No. 15**</u>: Undisputed solely for purposes of this motion but not material. Claims 73, 83, and 88 are not limited to any particular humanized version of 4D5, and require certain functional properties. Dr. Riechmann conceded that "[t]o figure out if a humanized 4D5 antibody, not known as of 1998, had the required functional properties, you would need to test it." Ex. 2 (Riechmann Dep.) at 243:12-21. For example, a fragment version of such an antibody might function differently as compared to a full-length version. Penn Opp. Ex. 1 at 211:1-3.

**Penn's SODF No. 16:** Some of the amino acid residues in SEQ ID NO 35 are involved in the binding of Herceptin to the HER2 receptor. Garcia Tr. 179:13-20.

<u>**Response to Penn's SODF No. 16:**</u> Undisputed but misleadingly incomplete and not material for the reasons set forth in response to SODF No. 15.

**Penn's SODF No. 17:** The structure and function of 4D5 and humanized versions of it were well-known as of 1998. Ex. 6, Pegram Opening Rpt. ¶¶ 130-133, 142-152, 154-166; Garcia Tr. 138:13-140:7; 47:17-20. Humanized 4D5 antibodies had been developed nearly a decade before 1998, and were being tested in humans by that time. Riechmann Rpt. ¶ 199.

<u>**Response to Penn's SODF No. 17:**</u> If Penn is asserting that *all* humanized versions of 4D5 were known, and their functions known, wrong as a matter of law. "To figure out if a humanized 4D5 antibody, not known as of 1998, had the required functional properties, you would need to test it." Ex. 2 (Riechmann Dep.) at 243:12-21. For example, a fragment version of such an antibody might function differently as compared to a full-length version. Penn Opp. Ex. 1 at 211:1-3. Otherwise undisputed but not material because claims 73, 83, and 88 are not limited to the known antibodies.

**Penn's SODF No. 18:** Each of the humanized 4D5 variants that Genentech made and published contained the amino sequence identified in the '558 patent as SEQ. ID 35 in the "CDR3H" region. Pegram Opening Rpt. ¶¶ 149, 160.

**Response to Penn's SODF No. 18:** To the extent that Penn is asserting that all humanized 4D5 variants made by Genentech at any point in time contained that sequence, incorrect; otherwise undisputed but not material for the reasons set forth in response to SODF No. 17.

**Penn's SODF No. 19:** The '558 Patent discloses representative species of anti-erbB antibodies so that one of skill in the art can visualize or recognize the members of the genus in view of the diversity of the anti-erbB antibodies known in the art. Riechmann Rpt, ¶¶ 155-159.

**Response to Penn's SODF No. 19:** Incorrect as a matter of law.  This is a legal conclusion, *i.e.*, Penn is contending that there is written description support, and Genentech's briefs show, conclusively, that no reasonable jury could find the asserted claims adequately described.  The known anti-erbB antibodies do not allow one of skill to visualize or recognize other antibodies with the same functional properties; instead, the skilled artisan must conduct trial-and-error experimentation.  *See* facts set forth in D.I. 222 ¶¶A1-A18.

**Penn's SODF No. 20:** The '558 Patent discloses representative species of humanized 4D5 antibodies so that one of skill in the art can visualize or recognize the members of the genus in view of the knowledge in the art about 4D5 and its humanized versions. Riechmann Rpt, ¶¶ 164-165.

**Response to Penn's SODF No. 20:** Incorrect as a matter of law.  This is a legal conclusion, *i.e.*, Penn is contending that there is written description support for claims 73, 83, and 88, and Genentech's briefs show, conclusively, that no reasonable jury could find those claims adequately described.  The known humanized 4D5 antibodies do not allow one of skill to visualize or recognize other antibodies with the same functional properties; instead, the skilled artisan must conduct trial-and-error experimentation.  *See* facts set forth in D.I. 222 ¶¶A1-A18.

**Penn's SODF No. 21:** There are common structural feature of humanized 4D5 antibodies, including those that comprise SEQ ID NO 35 so that one of skill in the art can visualize or recognize the members of the genus. Riechmann Rpt, ¶ 169.

**<u>Response to Penn's SODF No. 21</u>:** Incorrect as a matter of law for the reasons set forth in response to SODF Nos. 17 and 20.

***Page Count Certification*:**    The undersigned certifies that Genentech's Responses to Penn's Statements of Disputed Facts are within the page limit of 4 pages; Genentech has repeated Penn's Statements for the Court's convenience.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

*/s/ Karen Jacobs*

Nicholas Groombridge
Eric Alan Stone
Jennifer H. Wu
Josephine Young
Rebecca E. Fett
Stephen A. Maniscalco
Naz Wehrli
Jacob M. Berman
Kyle Bersani
Chih-wei Wu
GROOMBRIDGE, WU, BAUGHMAN
  & STONE LLP
565 Fifth Avenue, Suite 2900
New York, NY  10017
(332) 269-0030

Daralyn J. Durie
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
(415) 268-7000

Kira A. Davis
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017-3543
(213) 892-5200

Fitz B. Collings
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC  20037
(202) 887-1500

Aaron G. Fountain
MORRISON & FOERSTER LLP
John Hancock Tower
200 Clarendon Street, Floor 21
Boston, MA  02116
(617) 648-4700

December 4, 2024

Karen Jacobs (#2881)
Derek J. Fahnestock (#4705)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@morrisnichols.com
dfahnestock@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendant Genentech, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 4, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Brian E. Farnan, Esquire<br>Michael J. Farnan, Esquire<br>FARNAN LLP<br>919 North Market Street, 12th Floor<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Elizabeth J. Holland, Esquire<br>Dov Hirsch, Esquire<br>Mena Gaballah, Esquire<br>ALLEN OVERY SHEARMAN STERLING US LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Nicholas K. Mitrokostas, Esquire<br>Katherine Kieckhafer, Esquire<br>Shaobo Zhu, Esquire<br>ALLEN OVERY SHEARMAN STERLING US LLP<br>One Beacon Street<br>Boston, MA 02108<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| William G. James, Esquire<br>Christopher P. Galligan<br>Matthew R. Miner<br>ALLEN OVERY SHEARMAN STERLING US LLP<br>1101 New York Avenue, NW<br>Washington, D.C. 20005<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

/s/ Karen Jacobs

_____

Karen Jacobs (#2881)